107 So.2d 765 (1958)
WING, Incorporated, Appellant,
v.
Catherine B. ARNOLD, Appellee.
No. 58-104.
District Court of Appeal of Florida. Third District.
December 23, 1958.
Rehearing Denied January 22, 1959.
*766 Holcomb & Holcomb, Miami, for appellant.
Herbert E. Kaufman, Miami, for appellee.
CARROLL, CHAS., Chief Judge.
The appellee Catherine B. Arnold, the plaintiff below, filed a suit in equity against Ralph Wing, Marie Wing and Wing Incorporated, for cancellation of a ninety-nine year lease and for other relief.
The complaint alleged that the appellee Arnold, who will be referred to as the lessor, entered into a ninety-nine year lease on May 1, 1952, with the appellants Ralph Wing and Marie Wing, his wife. The Wings then assigned the lease to the appellant Wing Incorporated, referred to hereinbelow as the lessee.
As a basis for the prayer for cancellation the complaint alleged that certain structures on the premises were demolished by lessee and not rebuilt, contending such action was in violation of a provision of the lease requiring such reconstruction.[1]
*767 The complaint alleged an effort of the lessee corporation to exercise an option contained in the lease for purchase of the premises, and the plaintiff prayed for a decree determining that the lessee was not entitled to exercise the option to purchase, or in the alternative, that the attempt to exercise the option was not done in the manner provided for in the lease.[2]
The plaintiff-lessor also charged that the option to purchase, granted to the lessee in the lease, was void as being in violation of the Rule Against Perpetuities.
The defendants answered averring that the buildings which had been torn down were of little use and value; that they were offered to the plaintiff who had not desired to move them elsewhere; that the lessee had paved the lot for use as a parking lot; and that in the intervening years the plaintiff lessor had made no objection. Lessee further averred that the paving improvements had cost more than the value of the structures which were destroyed and that the removal of the structures and paving of the area had resulted in an improvement of the premises.
By counterclaim lessee sought specific performance of the option to purchase, the validity of which had been drawn into dispute by the plaintiff. On lessor's motion to dismiss, the court dismissed the counterclaim, saying: "The notice dated November 21, 1956, sent by the defendant Wing Incorporated, to the plaintiff did not constitute an exercise of the option to purchase contained in the lease, copy of which is attached to the complaint as Exhibit A, and on that ground alone, without passing on any other points the plaintiff is not required to specifically perform the provisions of said option."
The cause came on for trial before the chancellor, who personally heard the testimony and rendered his final decree on December 20, 1957. In his decree the chancellor denied the plaintiff's prayer for cancellation of the lease, ruled that the provisions relating to the option did not violate the Rule Against Perpetuities, made provision for the lessee to exercise the option to purchase in accordance with the terms of the lease, and allowed an attorney's fee for the plaintiff-lessor on the basis of a provision in the lease for payment of such attorney's fees for enforcement of lessor's rights thereunder. In a supplemental order the amount of such attorney's fees was fixed at $4,500.
The original lessees and their assignee appealed from the decree, directing their assignments to the provision thereof relating to attorney's fees.[3] The lessor filed cross-assignments of error directed to the provisions of the decree which denied her prayer for cancellation of the lease, and which recognized the validity and effectiveness of the option to purchase.
As a preliminary to his denial of the lessor's prayer for cancellation and termination of the lease, the chancellor made certain findings and conclusions which we here quote, as follows:

*768 "* * * The testimony shows that the buildings were torn down in August of 1953, and that on or about February of 1955, according to the terms and conditions of said lease, if the defendant failed to rebuild the destroyed premises or buildings in as equally good condition, or in better condition, than the same were prior to said destruction, that the default would have occurred at that time. The testimony fails to show that the plaintiff exercised her right to cancel the lease at that time, or at any time from February of 1955 to the time of filing of this complaint in March of 1957, more than two (2) years after the alleged breach by the defendants. The testimony shows that the defendants have been current in the rent payments under the lease and that the plaintiff has accepted the rent payments from the defendants without exercising her right, if she so desired, to cancel the lease as she is attempting to do in this suit, and declaring a forfeiture of the defendants' security and rights under said lease, and declaring the option to be null and void.
* * * * * *
"It is apparent from the actions of the plaintiff, assuming that the defendant, Wing Incorporated, in failing to rebuild the destroyed premises within the eighteen month period required under the lease agreement constituted a breach of the agreement, the plaintiff having failed to take any action for a period of more than two (2) years, by virtue of her conduct thereby waived or acquiesced in said breach and, therefore, under equitable grounds should be precluded from enforcing a forfeiture against the defendants herein. Equity will aid the defaulting party by relieving against it, if necessary. See Pomeroy's Equity Jurisprudence, Vol. 2, 5th Edition, Sec. 451A. The courts have consistently held that where a lessor remains silent and a lessee conducts himself in good faith relying upon the lessor's failure to exercise a forfeiture because of a breach in a lessee's performance under an agreement and whereby a lessee will be placed in such a situation that he will be greatly damaged if a lessor is permitted to prevail, will not permit a lessor to take advantage by his own conduct or silence to prevail over a lessee defendant, and the lessor shall have been considered to have waived the benefits of said conditions under the lease agreement. This is especially true where a lessor has not been damaged or said damage can be compensated by the payment of money damages."
Where there is a breach of a covenant by a lessee, sufficient to entitle the lessor to cancel the lease, the right of action thus created in the lessor may be waived. Such waiver by the lessor may be express, or through acquiescence; and when present can prompt equity to relieve the lessee from the default. Rader v. Prather, 100 Fla. 591, 130 So. 15. The chancellor's findings and conclusions on this point have adequate support in the record.
Nor was the chancellor in error in refusing to hold that the option to purchase, granted to the lessee in the ninety-nine year lease, was in violation of the Rule Against Perpetuities.[4]
The question thus raised with reference to an option to purchase when contained in a lease, is one which appears to be novel in this state. There is substantial authority that an option in gross, *769 that is, not appurtenant to a leasehold, is subject to the Rule Against Perpetuities. However, the weight of American authority, with which we agree, is that an option to purchase in a lessee, and exercisable during the term of his lease, is an exception to the general rule in regard to options, and is excluded from the operation of the Rule Against Perpetuities. Keogh v. Peck, 316 Ill. 318, 147 N.E. 266, 38 A.L.R. 1151; Hollander v. Central Metal & Supply Co., 109 Md. 131, 71 A. 442, 23 L.R.A.,N.S., 1135. See Weber v. Texas Co., 5 Cir., 1936, 83 F.2d 807; Dozier v. Troy Drive-in Theatres, 265 Ala. 93, 89 So.2d 537; Restatement, Property, § 395; 6 Am.L. of Prop., § 24.57; Simes and Smith, The Law of Future Interests, 2d Ed., § 1244; 5 Powell on Real Prop., § 771; Annotation, 162 A.L.R. 581, 599; Leach, Perpetuities in a Nutshell, 51 Harv.L.Rev. (1938) 638, 661. Contra, Gray: The Rule Against Perpetuities, 4th Ed., § 230.3, and First Huntington National Bank v. Gideon-Broh Realty Co., 139 W. Va. 130, 79 S.E.2d 675.
The reasoning given to the majority view is that improvement of the land is stimulated rather than retarded by the presence of an option to purchase in the lessee, and substantial improvements may be made by the lessee with impunity. Without the benefit of such an option it would not be good business for a lessee to make improvements which would have substantial value at the end of the lease term; and a contrary rule would defeat the policy favoring free alienation and use of property, sought to be furthered by the Rule Against Perpetuities.
We also reject the contention of the appellee-lessor that the provision in the lease for renewals has a bearing on the question of the validity vel non of the option, vis-a-vis the Rule Against Perpetuities. While such an option to purchase will follow a lease into its renewals (Sisco v. Rotenberg, Fla. 1958, 104 So.2d 365), the reason for the freedom of the option from the Rule Against Perpetuities for the lease term of ninety-nine years, applies equally to any such longer term to which the lease thus may be extended.
The appeal of the lessee Wing Incorporated challenged the allowance of attorney fees to lessor. The allowance was bottomed on a contract for payment thereof contained in the lease,[5] as follows:
"The Lessees further covenant and agree with the Lessor to pay all court costs and reasonable attorney's fees which may be paid or incurred by the Lessor in enforcing the covenants, conditions, agreements and obligations in this Indenture set forth in the event of a default by the Lessees, and all such costs and reasonable attorney's fees, if paid or incurred by the Lessor, shall be as so much rent due at the maturity of the next rental installment from the Lessees to the Lessor, and shall bear interest at the rate of six per centum (6%) per annum from date of payment thereof by the Lessor until repayment thereof to the Lessor."
The lessee, however, argues that the fees should not have been allowed because the lessor was unsuccessful in her suit to cancel the lease, and in her effort to invalidate the lessee's option to purchase. The question thus presented is not without difficulty, and the parties have not given us the benefit of any helpful authorities on the point. This suit was brought for the dual purpose of enforcing a provision under which the lease could be terminated for a default by the lessee, and for a determination that the option to purchase granted to the lessee was invalid. The latter effort did not come within the covenant as to fees, in that it sought to invalidate rather than to enforce a provision of the lease. The former, while it sought to enforce a right incident to a default, lost its character for the purposes *770 of the attorney fees contract, when the trial court absolved the lessee of the default, which had been charged against it as a basis for the attempted cancellation of the lease. We construe the provision of the lease relating to attorney fees, as quoted hereinabove, as being incident to the establishment of a default and for a proceeding based thereon. See Robinson v. Feltus, Fla. 1953, 68 So.2d 815; Selman v. Bryant, 261 Ala. 53, 72 So.2d 704, 709; Arnot v. Union Salt Co., 186 N.Y. 501, 79 N.E. 719. That requirement for the existence or establishment of an actionable default was not met by the plaintiff-appellee; and since a basis for the awarding of attorney fees was lacking, the decree must be reversed to that extent.
The decree appealed from is affirmed as against the cross assignments of error, and reversed on the appeal of the lessee challenging the allowance of attorney's fees, and the cause is remanded for the entry of an order modifying the decree accordingly
Affirmed in part and reversed in part.
HORTON and PEARSON, JJ., concur.
NOTES
[1] The covenant of the lessees thus relied on appeared in the lease as follows: "8. The Lessees further covenant and agree with the Lessor that if any building situate at any time upon the demised premises shall be either damaged or destroyed by fire or other casualty during the term hereof, or if the Lessees shall destroy, tear down or demolish any buildings or improvements upon said land, the Lessees will repair and rebuild the same as soon as is reasonably possible; but, in any event, within eighteen (18) months after such fire or other casualty or destruction so that said building or buildings shall be in equally as good condition, or in better condition that it or they was or were prior to such damage or destruction, and such repairing and rebuilding shall be at the Lessees' cost and expense, with the understanding that monies collected through insurance may be used as hereinafter provided. * * *"
[2] Concerning the option to purchase, the lease provided: "The Lessor covenants and agrees that the Lessees may at any time after May 1, 1957, purchase all of the Lessor's interest in the leased premises at a price to be determined by an appraisal to be made in the following manner: * * *" There followed a lengthy provision for the manner of exercise of the option, under which no money was required to be paid at the outset but machinery was to be put into effect for appraisers who would determine the price to be paid, which it was provided would not be less than $150,000.
[3] Pending this appeal, an order was made dismissing appellants Ralph Wing and Marie Wing, leaving the corporation as the sole appellant.
[4] Florida recognizes the common law Rule Against Perpetuities, stated in Story v. First Nat. Bank & Trust Co., in Orlando, 115 Fla. 436, 156 So. 101, 104, as providing that "the vesting of an estate under a will or deed can be postponed no longer than a life or lives in being and twenty-one years plus the period of gestation."
[5] See Logan v. Slade, 28 Fla. 669, 10 So. 25; Brite v. Orange Belt Securities Co., 133 Fla. 266, 182 So. 892; Hoffman v. Barlly, Fla.App. 1957, 97 So.2d 355.